**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                          :
JAMAR JUNNE,                              :
                                          :   Civil Action No. 07-5262 (RMB)
          Plaintiff,                      :
                                          :
          v.                              :
                                          :   **O P I N I O N**
ATLANTIC CITY                             :
MEDICAL CTR., et al.,                     :
                                          :
          Defendants.                     :
_____:


**APPEARANCES**:

JAMAR JUNNE, #154003, Plaintiff <u>Pro</u> <u>Se</u>
Central Reception and Assignment Facility
P.O. Box 7450
West Trenton, New Jersey 08628

**RENÉE MARIE BUMB, District Judge**

        This matter comes before the Court upon submission of a "re-amended" civil complaint ("Complaint") by Jamar Junne ("Plaintiff"), an inmate recently transferred from Atlantic County Justice Facility ("Facility") to his current place of detention, the Central Reception and Assignment Facility in West Trenton. The instant matter was initiated on November 1, 2007, when the Clerk received a civil complaint from Plaintiff, accompanied by Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and Plaintiff's account statement. <u>See</u> Docket Entry No. 1. Since Plaintiff's original complaint was an illegible document, this

Court issued an order administratively terminating this action, without filing the original complaint and without assessing a filing fee. <u>See</u> Docket Entry No. 2. On December 17, 2007, the Clerk received from Plaintiff his first amended complaint. <u>See</u> Docket Entry No. 3. On February 4, 2008, having thoroughly reviewed Plaintiff's allegations stated in the first amended complaint and his application to proceed <u>in forma pauperis</u>, this Court dismissed, <u>sua sponte</u>, certain Plaintiff's claims and proceeded the remaining claims past the <u>sua sponte</u> dismissal stage. <u>See</u> Docket Entries Nos. 7 and 8. Next day, on February 5, 2008, summons were issued to Defendants named in the first amended complaint with respect to Plaintiff's allegations that survived <u>sua sponte</u> dismissal. <u>See</u> Docket Entry No. 9.

On March 14, 2008, this Court received Plaintiff's instant Complaint intended to "re-amend" his previous, partly dismissed and partly proceeded, submission. <u>See</u> Docket Entry No. 10. Two weeks later, Plaintiff notified the Court about his transfer from the Facility, <u>see</u> Docket Entry No. 11, and submitted an inquiry about this Court's treatment of his instant "re-amended" Complaint.

Plaintiff's attempt to "re-amend" his submission invoked two aspects. The first (and threshold) inquiry is whether Plaintiff's new allegations present cognizable claims. The second one is whether amendment should be allowed after service of process on

2

Defendants named in Plaintiff's previous pleading with respect to his allegations that survived <u>sua</u> <u>sponte</u> dismissal.

I.   <u>**STANDARD OF REVIEW**</u>

    A.   **RULE 8: FACTUAL PLEADING REQUIREMENT**

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See <u>id.</u>

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  See <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> [There are] two new concepts in <u>Twombly</u> [127 S. Ct. 1955 (2007)].  First, . . . "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his

'entitle[ment] to relief' requires [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." <u>Id.</u> at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Id.</u> at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965 & n.3. Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from <u>Conley</u>. <u>See id.</u> at 1968. . . .

    [T]he <u>Twombly</u> decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. <u>See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C.</u>, 499 F.3d 663, 667 (7th Cir. 2007). . . . After <u>Twombly</u>, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." <u>Id.</u> . . . .

    The more difficult question raised by <u>Twombly</u> is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime. . . . The Court explained that a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible" . . . . 127 S. Ct. at 1974. . . . "Plausibility" is related to the requirement of a Rule 8 "showing." [Thus, while a court cannot] dismiss[] . . . a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. [T]he pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. <u>Id.</u> This "does not impose a probability requirement at the pleading stage[]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. <u>Id.</u>

<u>Phillips</u>, 515 F.3d at 230-34 (original brackets removed).

### B.   RULES 18 and 20: JOINDER OF DEFENDANTS AND CLAIMS

Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a), governs the joinder of claims. <u>See</u> Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B). Rule 18 (a) provides : "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple

5

> defendants Rule 20 operates independently of
> Rule 18 . . .
>     Despite the broad language of Rule 18(a),
> plaintiff may join multiple defendants in a
> single action only if plaintiff asserts at
> least one claim to relief against each of them
> that arises out of the same transaction or
> occurrence and presents questions of law or
> fact common to all . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 <u>Federal Practice & Procedure Civil 3d</u> §1655; <u>see also</u> <u>United States v. Mississippi</u>, 380 U.S. 128, 143 (1965) (where county registrars were alleged to be carrying on activities which were part of a series of transactions or occurrences the validity of which depended upon questions of law or fact common to all of them, joinder of registrars in one suit as defendants was proper under Rule 20(a)); <u>Ross v. Meagan</u>, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), <u>overruled on other grounds by</u>, <u>Neitzke v. Williams</u>, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Consequently, a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact. <u>See</u> Fed. R. Civ. P. 20(a)(2). As the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he

may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . .
>       A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007).


### C.   RULE 15: AMENDING A PLEADING

Ordinarily, the plaintiff may be granted "leave [to amend] when justice so requires." See Foman, 371 U.S. at 182; Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993). Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep . . . may be decisive to the outcome and accept  the principle that the purpose of pleading is to facilitate a proper decision on the merits." Foman, 371 U.S. at182-83. However, while "Rule 15(a) gives the court extensive discretion to decide whether to grant leave to amend after the time for amendment

as of course has passed," Alan Wright et al., <u>Federal Practice and
Procedure:</u> Civil 2d § 1486 (2d ed. 1990), the Rule 15(a) "generous
standard is tempered by the necessary power of a district court to
manage a case" in light of the factors listed in <u>Foman</u>. <u>See
Shivangi v. Dean Witter Reynolds, Inc.</u>, 825 F.2d 885, 891 (5th Cir.
1987). The Supreme Court has identified several factors to be
considered when applying Rule 15(a):

> If the underlying facts or circumstances relied upon by
> a plaintiff may be a proper subject of relief, he ought
> to be afforded an opportunity to test his claim on the
> merits. In the absence of any apparent or declared
> reason--such as undue delay, bad faith or dilatory motive
> on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue
> prejudice to the opposing party by virtue of allowance of
> the amendment, *futility of amendment*, etc.--the leave
> sought should, as the rules require, be "freely given."

<u>Foman</u>, 371 U.S. at 182 (emphasis supplied); <u>see</u> <u>also</u> <u>Heyl &
Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands,
Inc.</u>, 663 F.2d 419, 425 (3d Cir. 1981), <u>cert. denied</u>, 455 U.S. 1018
(1982).

It follows that the courts need not entertain futile
amendments to the pleadings, e.g., amendments that aim to assert
claims subject to <u>sua</u> <u>sponte</u> dismissal or to an affirmative defense
incorporated either in the proposed claim or in the claims already
submitted. <u>See</u>, <u>e.g.</u>, <u>Leveto v. Lapina</u>, 258 F.3d 156, 161 (3d Cir.
2001)("[A claim] may be subject to dismissal . . . when an
affirmative defense . . . appears on its face") (quoting <u>ALA, Inc.
v. CCAir, Inc.</u>, 29 F.3d 855, 859 (3d Cir. 1994), and citing Alan

Wright et al., <u>Federal Practice and Procedure</u> § 1357, at 358-59 (1990)).

Having reviewed the applicable limitations set forth in Rules 8, 15, 18 and 20, this Court now turns to allegations set forth in Plaintiff's instant "re-amended" Complaint.

## II.   <u>CONTENT OF PLAINTIFF'S "RE-AMENDED" COMPLAINT</u>

Plaintiff's latest submission consists of four documents: (1) a pre-printed civil rights complaint form; (2) an application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>; (3) a letter-like document addressed "To Honorable Judge Renee Marie Bumb"; and (4) Plaintiff's prison account statement, apparently intended to accompany his application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.   Since Plaintiff was granted <u>in</u> <u>forma</u> <u>pauperis</u> status to prosecute this action in this Court's prior order, <u>see</u> Docket Entry No. 8, Plaintiff's new application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and his prison account statement are of no relevance: Plaintiff's <u>in</u> <u>forma</u> <u>pauperis</u> status not need be "renewed."   The pre-printed civil rights complaint form has five pages but only one allegation.   The allegation reads "see attached," and is repeated without any clarification.   <u>See</u> Docket Entry No. 10-1, at 3-4.   Hence, the actual "re-amended" Complaint is Plaintiff's letter to the Court, a seven-page document.   <u>See</u> Docket Entry No. 10-3 ("Letter").

The Letter begins with the following:

Your Honor, my failure to state a claim for which relief may be granted was due to my complying with the

9

instructions of 42 U.S.C. [§] 1983 form, which states to be [as] brief as possible. Because of my doing as directed by this form, Your Honor interpreted by briefness in the wrong manner and the [D]efendants were dismissed.[1]

Letter at 1.

After so stating, Plaintiff proceeds with a re-statement of the allegations set forth in his preceding amended complaint. In that previous amended complaint, Plaintiff named the following Defendants: (1) a physician working at the emergency room of a general hospital; (2) the general hospital itself; (3) medical personnel employed by the Facility through a medical center servicing correctional institutions; (4) the center itself; (5) the Facility's supervising officers; and (7) the county, where the Facility is located, and the county freeholders. See Docket Entry

---

[1]

Plaintiff's previous submission, i.e., the one that included his amended complaint was a 29-page document. See Docket Entry No. 3. Same as Plaintiff's current submission, the previous application included: (1) a pre-printed § 1983 complaint form used only to assert the claim reading only "see attached paperwork" and to request "7 million dollars or negotiable" from each named Defendant, see id. at 1-4, 21-22; (2) an application to proceed in forma pauperis, see id. at 23-29; and (3) sixteen pages of complaints, see id. at 5-20, fourteen of which were dedicated to his statement of claims. See id. at 7-20. Since these fourteen pages consisted of sixteen to twenty-one lines per page, Plaintiff's previous submission exceeded the twelve lines provided in ¶6 of the "Statement of Claims" section in the pre-printed § 1983 form by more than twenty times. Consequently, this Court is not entirely clear as to the basis for Plaintiff's assertions that: (1) his previous submission was "as brief as possible"; or (2) that his inability to state a claim was caused by Plaintiff's alleged compliance with instructions contained in the pre-printed form.

No. 3, at 6.  This Court summarized the allegations stated in his preceding amended complaint as follows:

> It appears that the events underlying Plaintiff's Amended Complaint occurred in relation to Plaintiff's arrest, which took place on or about June 18, 2007. It also appears that, either during his arrest or shortly prior to it, Plaintiff had an accident that injured Plaintiff's foot shattering his heel.  . . . Plaintiff's claims are of two types: one group of claims relates to Plaintiff's medical condition, i.e., his injured foot, while another relates to conditions of his pre-trial confinement unrelated to Plaintiff's injury.  With respect to the former, i.e., the medical group of claims, it appears that Plaintiff's injury was such that Plaintiff was largely immobile and needed assistance walking.  [While en route to jail, the arresting] officers brought Plaintiff . . . to the emergency room of Atlantic City Medical Center [to have his] foot examined. . . . Doctor "?" (who worked the emergency room . . .) examined Plaintiff's foot, [conducted] an X-ray test [and] concluded that Plaintiff had a shattered heel.  So concluding, Doctor "?" informed Plaintiff that Plaintiff's foot had to be treated by an orthopedic surgeon, [and that] no orthopedic surgeon was available at Atlantic City Medical Center, . . . provided Plaintiff with a set of crutches, as well as with a prescription for pain medication . . . and released Plaintiff to the custody of police officers, expressing the Doctor's belief that the Facility: (a) would provide the pain medication to Plaintiff upon his arrival, and (b) would also arrange for Plaintiff to see an orthopedic surgeon. However, . . . Doctor Hubbard, an employee of the Center for Family Guidance Health System (a medical entity contracted by the Facility), refused to provide Plaintiff the pain medication prescribed by Doctor "?" and [failed to] to arrange for medical treatment of Plaintiff's foot . . . for the period of six months or more.
>      The second group of claims challenges Plaintiff's conditions of confinement at the Facility.  According to the Amended Complaint, Plaintiff was housed in  the medical unit because of his foot injury.  In this unit, the detainees were confined to their] cells for 18 hours a day for the period of two month from the date of Plaintiff's arrival.  This fact of in-cell confinement] made it impossible for Plaintiff to use the bathroom located in the cell with the degree of privacy desired by

11

> Plaintiff because the cells were double-bunked . . . .
> Plaintiff's sense of privacy was offended when he had to
> defecate in the presence of his cell-mate . . . . In
> addition to the foregoing, . . . after the 18-hour in-
> cell confinement was lifted, the medical unit was denied
> fresh air and exercise for one day. [Finally, Plaintiff
> challenged] the collections policy, under which the
> Facility deducts $50 monthly lodging fee from the
> accounts of those detainees who have sufficient funds on
> their prison accounts.

Docket Entry No. 7, at 2-6.

Responding to Plaintiff's previous allegations, this Court:
(1) dismissed, without prejudice, Plaintiff's allegations against
the general hospital and its employee-doctor, for failure to meet
the color of law requirement; (2) dismissed, with prejudice, his
lack-of-private-bathroom, lack-of-exercise and housing fees
conditions-of-confinement allegations for failure to state a claim
upon which relief may be granted; (3) dismissed, without prejudice,
Plaintiff's double-bunking conditions-of confinement claims, as
well as his respondeat superior medical claims against supervising
prison officials, the county and its freeholders; and (4) proceeded
Plaintiff's medical claims against the Facility's medical personnel
and the medical center servicing correctional institutions. See
id. at 17-34.

The allegations contained in Plaintiff's instant Letter-
Complaint are subdivided into the following six sections:

1.  Allegations against the warden asserting "undue confinement";

2.  Allegations against the warden asserting "denial of medical
    care";

3.  Allegations against the doctor employed by the general hospital asserting "denial of medical attention";

4.  Allegations against a supervising officer at the Facility asserting both "denial of medical attention" and "undue confinement";

5.  Allegations against the general hospital asserting "denial of medical attention"; and

6.  Allegations against the county.

For the reasons discussed below, this Court will deny Plaintiff's application to "re-amend" his "amended complaint."

III. **DISCUSSION**

A.  **UNDUE CONFINEMENT ALLEGATIONS**

Plaintiff, in his first and fourth set of allegations, maintains that he "was unduly confined in [his] room for 18 hours." Docket Entry No. 10-3, at 2, 6. Elaborating on his "undue confinement" claim, Plaintiff clarifies that

> [the] policy [of keeping those inmates who were so sick
> to be housed in the Facility's medical unit in their
> rooms, except for 6 hours a day when these sick inmates
> could move around the Facility] was initiated for over 10
> years now[, the policy's goal was to ensure] that other
> inmates from other areas of the [Facility] had a
> convenient route throu[gh] the medical unit . . . to the
> [adjoining] medical department. There has always existed
> an alternative route to the . . . medical department[,]
> but it was never utilized . . . until another inmate
> filed a 42 U.S.C. § 1983 [complaint] against [the Facility
> officials. That other inmate was] Randolph Carson [and
> his case is on the docket of Judge Robert B. Kugler].
> This sudden change of policy shows an awareness of

> wrongdoing on behalf of administration.  This behavior .
> . . caused [Plaintiff] stress, hopelessness and fits of
> claustrophobia.  [Plaintiff was] confined for 18 hours
> [with 6 hours only outside his room] for two months.
> This policy punished the persons residing in the medical
> unit while [other inmates] from other areas [of the
> Facility] were free from [this] undue confinement.
> [Plaintiff was] punished for a matter of merely
> convenience.

Id. at 2.

These allegations are defective for a number of reasons.
First, Plaintiff misinterprets this Court's decision to consider
his earlier "amended complaint" as an invitation to submit an
exhaustive "re-amended" Complaint asserting, inter alia, every
possible claim Plaintiff might have against the Facility's
supervisory personnel.  Plaintiff fails to understand that this
Court's dismissal of all Plaintiff's claims against the Facility's
supervisory officials rendered Plaintiff's now articulated
conditions-of-confinement allegations against prison officials
barred by Rule 20(a)(2).  Indeed, there appears to be no
transactional connection between Plaintiff's alleged inability to
move around because of his untreated medical injury and Plaintiff's
now articulated claim of his unsatisfied desire to move around the
Facility for more than six hours per day.[2]  Such pleadings appear
to stretch the limitations of Rule 20 to the degree not envisioned

---

[2]

    If anything, Plaintiff's previous claims (asserting his
virtual immobility) factually contradict Plaintiff's now
articulated claims that his need to exercise was left unsatisfied.

even by the lenient standards applied by courts to <u>pro</u> <u>se</u> applications by prisoners, <u>see</u> <u>George v. Smith</u>, 507 F. 3d at 607, and preclude this Court from allowing Plaintiff addition of these new claims.

Next, even if such expansion of Plaintiff's claims would not be prohibited by the requirements of Rule 20, Plaintiff's claims are substantively meritless.  As this Court already explained to Plaintiff,

> In evaluating the constitutionality of conditions or restrictions of [civil] detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. . . . Not every disability imposed during [civil] detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. . . .  A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].  Thus, if a particular condition or restriction of [civil] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."

Docket Entry No. 7, at 14-15 (quoting <u>Bell v. Wolfish</u>, 441 U.S. at 535-39).

In his current Letter-Complaint, Plaintiff himself spells out the legitimate governmental objective to which the challenged policy was related: he unambiguously states that the Facility officials instituted the policy of keeping the inmates (who were so sick that they had to be housed within the medical unit) in their rooms and allow them only six hours of free movement in order to ensure convenient and speedy access to the medical department by those inmates who were housed in the general population but required medical help. No language in the Fourteenth Amendment or in the case law interpreting this core provision indicates that the prison officials should achieve a legitimate governmental objective through the method which is "equally burdensome" on all inmates; all that is required is a reasonable relationship between the action taken and a legitimate governmental objective. <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. at 535-39. Moreover, even if the selection of the method of achieving a legitimate governmental objective takes in consideration administrative conveniences of prison officials, such selective process does not violate the inmates' constitutional rights. <u>See</u> <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 352-53 (1987) (reaching an administrative decision, prison officials may factor in the needs of other inmates, as well as administrative conveniences of prison personnel and best modes to apply prison resources). Thus, the Facility's policy of six-hours-only-outside-

the-room for the inmates housed in the medical unit could not violate Plaintiff's Fourteenth Amendment rights.

Since Plaintiff's "undue confinement" allegations against Warden Gary Merline and Richard Mulvihill are subject to dismissal with prejudice, it would be futile to allow Plaintiff to "re-amend" his "amended complaint" to include these meritless allegations. See Foman, 371 U.S. at 182. Therefore, Plaintiff's motion to so "re-amend" his previous "amended complaint" will be denied.

### B.    ALLEGATIONS SEEKING TO MEET COLOR-OF-LAW REQUIREMENT

The third and fifth sections of Plaintiff's Letter-Complaint attempt to cure Plaintiff's failure to meet the color of law requirement with respect to a general hospital and a doctor (employed at the emergency room of that hospital) who X-rayed Plaintiff's foot, diagnosed the injury and prescribed Plaintiff pain-reducing medication. This Court already explained to Plaintiff the nature of color of law requirement:

> The color of state law element in a section 1983 action requires that "the conduct allegedly causing the deprivation of [the plaintiff's rights] be fairly attributable to the State." Lugar v. Edmonson Oil Co., 457 U.S. 922, 937 (1982). . . . The United States Supreme Court has articulated several instances where a private party's actions may be fairly attributed to state action, including when: (1) it results from the State's exercise of "coercive power"; (2) the State provides significant encouragement, either overt or covert; (3) a private actor operates as a willful participant in joint activity with the State or its agents; (4) a nominally private entity is controlled by an agency of the State; (5) a private entity has been delegated a public function

by the State; or (6) the private entity is entwined with governmental policies, or the government is entwined in its management or control.  <u>See</u> <u>Brentwood Acad. v. Tenn.</u> <u>Secondary Sch. Ath. Ass'n</u>, 531 U.S. 288, 296 (2001). . . .  The Court, in deciding whether a particular action or course of action by a private party is governmental in character, must examine: (1) the extent to which the actor relies on governmental assistance and benefits; (2) whether the actor is performing a traditional public function; and (3) whether the injury caused is aggravated in a unique way by the incidents of governmental authority.  <u>See</u> <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 621 (1991).

Docket Entry No. 7, at 9-11.   Applying these principles to Plaintiff's "amended complaint," this Court Concluded:

> nothing in Plaintiff's allegations suggests that the examination of Plaintiff's foot by [the doctor working in the emergency room of a general hospital] was "governmental in character," since neither the [hospital] nor [the doctor] relied on any governmental assistance or benefits or unique governmental authority when Doctor "?" had Plaintiff's foot X-rayed and provided Plaintiff with his diagnosis and prescription for pain medication.

<u>Id.</u> at 12.

Plaintiff now asserts that both the doctor and the hospital acted under color of law because:

(1) Plaintiff "overheard [his arresting officers] stat[ing] their disdain among [themselves] about the [possibility of] having to guard [Plaintiff if he was] admitted into the hospital for [his shattered heel] injury [and then their] tell[ing] the doctor that [Plaintiff's] presence was needed to conclude the investigation";

18

(2)   "the doctor told [Plaintiff] that [Plaintiff would] get medical attention at the [Facility]";

(3)   "in March [of 2000, that is, more than seven years prior to the events at issue, Plaintiff] suffered a similar injury . . . and was admitted overnight and examined by orthopedic doctor in the morning";

(4)   Plaintiff "saw [unspecified] inmates who suffered breaks on the street [and were] tak[en] to the hospital [and had] surgery administered";

(5)   the orthopedic surgeon, who eventually examined Plaintiff (after a period of delays in medical assistance by the Facility's medical personnel), concluded that Plaintiff's injury was worsened by the delay in treatment; and

(6)   the general hospital employed the doctor working in the emergency room.

Docket Entry No. 10-3, at 4-5, 7.

These allegations do not indicate that either the civilian doctor or the general hospital operated under color of law. Neither the doctor nor the hospital relied on governmental assistance and benefits, or performed a traditional public function; and the allegations do not suggest that the doctor's decision was affected in a unique way by the incidents of governmental authority.   See Edmonson v. Leesville Concrete Co., 500 U.S. at 621.

19

A medical practitioner's knowledge that his/her patient is an arrestee needed for a criminal investigation does not transform the doctor into a governmental official: otherwise, every doctor attending a patient who is either handcuffed or accompanied by police officers would automatically become a state officer. Similarly, the fact that a doctor expresses his/her opinion that the arrestee will receive the needed medical treatment in prison cannot transform the doctor into a governmental entity; indeed, it is logical for a medical practitioner to have faith in state's prison system and its medical personnel.  Finally, the fact that either Plaintiff or any other arrestee suffered an analogous injury and was kept in the hospital overnight is wholly irrelevant to the issue at hand: a medical decision made in one case does not create a constitutional right for the purposes of another.  Plaintiff cannot "stretch" his potentially viable claim against the Facility's medical personnel (proceeded by this Court past <u>sua sponte</u> dismissal) so to "import" that potential liability into his claims against the doctor at the general hospital and the doctor's employer.  His allegations, at most, raise medical negligence concerns but not a claim cognizable under § 1983.  Consequently, this Court will not allow Plaintiff to "re-amend" his "amended complaint" by including the claims which clearly fail to meet the color of law requirement.  See <u>Foman</u>, 371 U.S. at 182.

**C.    ALLEGATIONS AGAINST THE COUNTY**

Plaintiff's previous allegations against the County and its Freeholders were dismissed by the Court for Plaintiff's failure to "state any facts explaining how the County or its Freeholders actually partook in actions of other Defendants or how the County or its Freeholders actually interfered with Plaintiff's constitutional rights." Docket Entry No. 7, at 20-24. Plaintiff's current allegations present nothing but a paraphrased version of the same generalities, i.e., Plaintiff alleges that the County and its Freeholders must be deemed liable simply because the Facility is located within the County's geographic jurisdiction.

Since these allegations do not add one iota of new information to Plaintiff's previous statements, this Court sees no reason to allow Plaintiff "re-amendment" of his "amended complaint," see Foman, 371 U.S. at 182; Plaintiff's claims against the County and its Freeholders will remain dismissed without prejudice.

**D.    RESPONDEAT SUPERIOR ALLEGATIONS**

Finally, Plaintiff's second and fourth sections of the "re-amended" Complaint contain allegations that the warden and supervising officer at the Facility denied him medical attention. Specifically, these allegations read as follows:

> [The warden] is equally responsible for [Plaintiff] being denied all [Plaintiff has] mentioned in [Plaintiff's]

21

> amended complaint, while under the roof that he is
> warden.  After [Plaintiff's] request forms to doctor[s]
> Hubbard and Nugen went unanswered, [Plaintiff] filed
> inmate grievance forms to the Warden and the
> administration to aware them of what [Plaintiff was]
> being forced to endure; but never received a response in
> regard to seeking medical attention.  As a test,
> [Plaintiff] submitted a form in regard to loss of
> recreation and to [his] surprise [he] got a response via
> letter from the Warden himself. [Plaintiff] then again
> resubmitted same form asking for help to get assistance
> in regard to [Plaintiff's] injury but never received a
> response as like [Plaintiff's] form against loss of
> recreation.

Docket Entry No. 10-3, at 3; accord id. at 6 (asserting that the

supervising officer "being [D]ep[artment H]ead of the [Facility],

is overseer of the [Facility], its staff, members, the detainees,

as well as the Warden . . . himself.  From the point of [him] not

receiving medical attention, [Plaintiff] followed proper procedures

to dispute [his medical] treatment by submitting request forms and

grievances forms to which neither got [Plaintiff] a response from

the administration . . . . [The supervising officer] refused to

honor or investigate any of the concerns or claims made by

[Plaintiff]. . . . Such actions show indifference to [Plaintiff's]

health and well-being as an inmate/pre-trial detainee").

Substantively, Plaintiff's current allegations are almost

identical to those stated in his "amended complaint" and dismissed

by this Court without prejudice.  See Docket Entry No. 7, at 19-20

(quoting "amended complaint," Docket Entry No. 3, at 16-18).  The

only difference between Plaintiff's current allegations and those

stated prior is Plaintiff's statement that he wrote grievances to

the Warden and supervising officer asserting his concerns with insufficiencies of medical treatment Plaintiff was receiving from Drs. Hubbard and Nugen).  These "re-amended" allegations appear to be stated by Plaintiff in response to this Court's explanation as to the pleading requirements associated with a claim against a supervisory officer.  The Court explained to Plaintiff as follows:

> It is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'"  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement can be shown through allegations that a defendant directed, had actual knowledge of, or acquiesced in, the deprivation of a plaintiff's constitutional rights.  See id.; Monell, 436 U.S. at 694-95 (1978).  Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff.  See Sample v. Diecks, 885 F.2d 1099, 1117-118 (3d Cir. 1989); see also City of Canton v. Harris, 489 U.S. 378 (1989); Heggenmiller v. Edna Mahan Corr. Inst. for Women, No. 04-1786, 128 Fed. App. 240 (3d Cir. 2005).

Docket Entry No. 7, at 18-19.  It appears that Plaintiff: (1) reads the holding of Rode, Evancho and Monell as a statement that a supervisory official's mere knowledge of an alleged wrongdoing renders that official liable for the wrongdoing; and (2) ignores the requirement of pleading that the supervising official either

23

directed or acquiesced in the deprivation, or implemented certain policies with reckless indifference to the deprivations that these policies would cause.  However, such "mere knowledge" allegations are insufficient to state a constitutional claim.

## 1.   General Assessment of Claims Against Supervisors

The pleading standard discussed in Part I(A) of this Opinion has been developing for more than half a century.  The provision at issue, Rule 8(a), is as simple in its composition as it is complex in its interpretation.  The Rule provides:

> [a complaint] must contain (1) a short and plain statement of the grounds of the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . .

Fed. R. Civ. P. 8(a).  An accompanying provision, Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed. R. Civ. P. 8(d).

In a trilogy of cases, the Supreme Court reinforces the simplified pleading in Rule 8 and the goal of merits determination of the Federal Rules as a whole.  The Court's first look at pleading practice came in 1957 with Conley v. Gibson, 355 U.S. 41.  This class action lawsuit involved allegations of discrimination by African-American members against their union in violation of its duty of fair representation.  See id. at 42-43.  The union's motion to dismiss for failure to set forth specific facts in support of the discrimination allegations was granted by the district court and affirmed on appeal.  See id. at 41, 43-44.  The Supreme Court, however, reversed pointing to the liberal discovery and pretrial procedures of the Rules that permit "simplified notice pleading." See id. at 47-48.

25

However, judicial concern over the rise in frivolous civil rights litigation led some federal courts to require heightened pleading.  See Christopher M. Fairman, Heightened Pleading, 81 TEX. L. REV. 551, 574-82 (2002) (describing the genesis and proliferation of heightened pleading in civil rights litigation and suggesting that the Supreme Court's decision in Siegert v. Gilley, 500 U.S. 226, 235-35 (1991), could have been read as encouraged the adoption of heightened pleading requirement, especially in view of Justice Kennedy's concurrence endorsing heightened pleading as an accommodation between subjective intent and objective qualified-immunity analysis).  The Court of Appeals for the Fifth Circuit, and the district courts within the Fifth Circuit, were among the federal tribunals that adopted such heightened pleading requirement.  Consequently, when a § 1983 action arose out of two incidents involving the execution of search warrants by local law enforcement officers, the district court dismissed, with prejudice, plaintiffs' allegations against municipal officials upon finding that the complaint contained no allegations other than numerous conclusory statements that the municipal officials were the "policy makers," and their policies caused the alleged violation.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 755 F. Supp. 726 (N.D. Tex. 1991).  The Fifth Circuit affirmed the dismissal, stating:

26

> With the heightened pleading requirement as our guide, we
> turn to the particulars of this case.  Quite plainly,
> plaintiffs' complaint falls short of alleging the
> requisite facts to establish a policy of inadequate
> training.  Where . . . a lawsuit brought against a
> municipality is predicated on inadequate training of its
> police officers, [the plaintiffs filing in the Fifth
> Circuit] have to be demonstrated at least a pattern of
> similar incidents in which the citizens were injured in
> order to establish the official policy requisite to
> municipal liability under section 1983.  While
> plaintiffs' complaint sets forth the facts concerning the
> police misconduct in great detail, it fails to state any
> facts with respect to the adequacy (or inadequacy) of the
> police training.

Leatherman v. Tarrant County Narcotics Intelligence & Coordination
Unit, 954 F.2d 1054, 1058 (5th Cir. 1992) (citations, quotation
marks, original brackets and ellipses omitted).  The Supreme Court
disagreed with the Fifth Circuit's reliance on the heightened
pleading requirement.  See Leatherman v. Tarrant County Narcotics
Intelligence & Coordination Unit, 507 U.S. 163 (1993).  According
to the Supreme Court, the heightened pleading standard belonged to
claims falling within the scope of Rule 9(b) and ran afoul of the
express language of Rule 8 and Conley.[3]  See id. at 168.

   In spite of the Court's clarity, heightened pleading in civil
rights cases continued in many Circuits, although the test became
paraphrased in terms "a clear and convincing proof standard,"
required at summary judgment and trial.  See, e.g.., Crawford-El
v. Britton, 93 F.3d 813, 823 (D.C. Cir. 1996), rev'd, 523 U.S. 574

---

[3]
   However, the Leatherman Court neither lowered nor elaborated
upon the pleading requirement test set forth in Conley.

(1998).    This  compelled  the  Court  to  readdress  the  issue  in
Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002), an employment
discrimination  case  dismissed  for  failure  to  meet  the  Second
Circuit's heightened pleading requirement.    See Swierkiewicz v.
Sorema, N.A., 5 Fed. App. 63, 64 (2d Cir. 2001).  The Supreme Court
unanimously held that an employment discrimination complaint need
not  contain  specific  facts  establishing  a  prima  facie  case  of
discrimination; it must only meet Rule 8's notice standard.    See
Swierkiewicz,  534  U.S.  at  514-15  (relying  on  Leatherman  and
expressly repeating the Conley standard for dismissal, i.e., "only
if it is clear that no relief could be granted under any set of
facts that could be proved consistent with the allegations").

     However, this Conley language has been conclusively archived
by  the  Supreme  Court  in  Twombly,  127  S.  Ct.  1955.   Dedicating  a
very   careful   and   thoughtful   discussion   of   this   important
development, the Court of Appeals for the Third Circuit explained:

>     It is clear that the "no set of facts" language may no
>     longer be used as part of the Rule 12(b)(6) standard.  As
>     the Court instructed, "[t]his phrase is best forgotten as
>     an  incomplete,  negative  gloss  on  an  accepted  pleading
>     standard: once a claim has been stated adequately, it may
>     be supported by  showing any set of facts consistent with
>     the  allegations  in  the  complaint."   Twombly,  127  S.  Ct.
>     at 1969.  We find that these two aspects of the decision
>     are  intended  to  apply  to  the  Rule  12(b)(6)  standard  in
>     general. See Iqbal v. Hasty, 490 F.3d 143, 157 n.7 (2d
>     Cir. 2007) ("[I]t would be cavalier to believe that the
>     Court's rejection of the 'no set of facts' language from
>     Conley  .  .  .  applies  only  to  section  1  antitrust
>     claims.") . . . .  The Conley language was problematic
>     because,  for  example,  it  could  be  viewed  as  requiring
>     judges  to  speculate  about  undisclosed  facts.   "This

28

famous observation," the Court held, "has earned its
retirement.  The ['no set of facts'] phrase [in <u>Conley</u>]
is best forgotten as an incomplete, negative gloss on an
accepted pleading standard . . . . As the Supreme Court
explained,

> [t]his "no set of facts" language can be read in
> isolation as saying that any statement revealing
> the theory of the claim will suffice unless its
> factual impossibility may be shown from the face of
> the pleadings. . . .  On such a focused and literal
> reading of Conley's no set of facts, a wholly
> conclusory statement of claim would survive a
> motion to dismiss whenever the pleading left open
> the possibility that a plaintiff might later
> establish some set of [undisclosed] facts to
> support recovery.

<u>Twombly</u>, 127 S. Ct. at 1968 (alteration in original).
<u>See</u> <u>also</u> Geoffrey C. Hazard, <u>From Whom No Secrets Are
Hid</u>, 76 Tex. L. Rev. 1665, 1685 (1998) (explaining that)
(cited for related proposition in <u>Twombly</u>, 127 S. Ct. at
1969).

<u>Phillips v. County of Allegheny</u>, 515 F.3d at 232-34.


### 2.   Assessment of Claims Based on Filed Grievances

It is well established that "[p]risoners are not
constitutionally entitled to a grievance procedure and the state
creation of such a procedure does not create any federal
constitutional rights," <u>Wilson v. Horn</u>, 971 F. Supp. 943, 947 (E.D.
Pa. 1997), and a failure to respond to an inmate's grievances "does
not violate his rights to due process and is not actionable."
<u>Stringer v. Bureau of Prisons</u>, 145 Fed. App. 751, 753 (3d Cir.
2005) (citing <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir.
1996)).  However, the issue at hand is somewhat different, <u>i.e.</u>,

the question here is whether the allegation of a pre-trial detainee's submission of grievances (that is, the alleged fact of giving notice to supervisory officials) is sufficient to pass muster under the Rule 8(a) pleading standard, as explained by the Supreme Court in <u>Twombly</u> and further clarified by the Court of Appeals in <u>Phillips</u>.

The seminal case on the issue in this Circuit appears to be <u>Nami v. Fauver</u>, 82 F.3d 63 (3d Cir. 1996). In <u>Nami</u>, <u>pro se</u> plaintiff inmates brought an action under 42 U.S.C. § 1983 against defendant prison officials in which plaintiffs alleged that conditions in which they were confined amounted to cruel and unusual punishment under the Eighth Amendment. The defendants in <u>Nami</u> included, <u>inter alia</u>, the Commissioner of the New Jersey Department of Corrections, the warden and the Assistant Superintendent of the Unit. When the defendants moved under Rule 12(b)(6) for dismissal with prejudice (on the grounds that: (1) the complaint did not allege specific conduct by the defendants that has harmed the plaintiffs; (2) the defendants could not be held liable under § 1983 on the basis of the theory of <u>respondeat superior</u>; and (3) the defendants were state officials immune from suit under the Eleventh Amendment), the district court granted the defendants' motion. The Court of Appeals reversed, stating:

> We must determine whether, under any reasonable reading
> of the pleadings, the plaintiffs may be entitled to
> relief . . . . The complaint will be deemed to have
> alleged sufficient facts if it adequately put the

defendants on notice of the essential elements of the plaintiffs' cause of action. . . . The district court's order granting the defendants' motion to dismiss will be affirmed only if it appears that the plaintiffs could prove no set of facts that would entitle them to relief. [See] Conley v. Gibson, 355 U.S. 41 (1957). . . . [The] complaint actually states that "letters have been written to the [administration] concerning all matters set forth in the complaint. All requests for administrative remedies were refused." . . . This suggests that the defendants here were on actual notice by plaintiffs' reports of [plaintiffs' conditions of confinement]. Although, by itself, such notice may not equal proof of deliberate indifference, it nevertheless directly contradicts the district court's tacit conclusion . . . that plaintiffs could prove no set of facts that would . . . entitle them to relief. . . . [W]e cannot say that the plaintiffs would be unable to prove that prison conditions were objectively unacceptable, and that prison officials were deliberately indifferent to plaintiffs' plight. [Moreover,] the district court entertained, but rejected . . . the possibility that plaintiffs may be able to satisfy some deficiencies in their original pleading by filing an amended complaint [even though] plaintiffs may be able to allege in an amended complaint, for example, sufficient facts to support a finding that some defendants displayed deliberate indifference to certain harms, or that all officials were deliberately indifferent to the possibility that the conditions under which they housed the plaintiffs significantly increased the possibility of such well-known harms . . . .

Nami v. Fauver, 82 F.3d at 65-68.  Reading the holding of Nami

rendered in 1996 through the prism of Twombly abolishment of the

Conley language, as well as through the Court of Appeals' guidance

that "'literal compliance' with Conley 'could consist simply of

giving the names of the plaintiff and the defendant, and asking for

judgment,'" Phillips, 515 F.3d at 234, this Court concludes that a

mere allegation that a supervisory official respond to a grievance

must be dismissed for failure to state a cognizable § 1983 claim,

but that deficiency is best addressed through dismissal without prejudice.

This Court finds additional assurances in the Court of Appeals' decisions: Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993), and Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004). In Dumer, the Court of Appeals approved the grant of summary judgment in favor of the Commissioner of Corrections and prison warden accused of deliberate indifference to the plaintiff's serious medical needs. In that case, "the only allegation against either of these two defendants was that they failed to respond to letters [the inmate-plaintiff] sent to them explaining his predicament." Id. at 69. The court noted that "respondeat superior is, of course, not an acceptable basis for liability under § 1983," Durmer, 991 F.2d at 69 n.14, and went on to conclude that

> Neither of these defendants . . . is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.

Id. at 69. Further elaborating on the same issue in Spruill v Gillis, the Court of Appeals observed as follows:

> If a prisoner is under the care of medical experts ([two medical doctors] in this case), a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this

32

> division of labor. Moreover, under such a regime,
> non-medical officials could even have a perverse
> incentive not to delegate treatment responsibility to the
> very physicians most likely to be able to help prisoners,
> for fear of vicarious liability.

<u>Spruill</u>, 372 F.3d at 236. Joint reading of <u>Twombly</u>, <u>Phillips</u>, <u>Nami</u>, <u>Dumer</u> and <u>Spruill</u> leads this Court to conclude that a mere allegation by the prisoner that he filed grievances with prison officials complaining about deficiencies of his ongoing medical care must be dismissed for failure to state a cognizable constitutional claim, but such dismissal should be without prejudice in order to preserve the prisoner's right to amend his complaint in the event the evidence obtained by him during discovery (or through other means) provide him with a viable basis for stating a claim against these supervisory officials.[4]

---

[4] This Court is mindful of the fact that the allegations addressed in <u>Nami</u>, <u>Dumer</u> and <u>Spruill</u> were claims by convicted prisoners falling within the scope of the Eighth Amendment, while the case at bar implicates the Fourteenth Amendment applicable to conditions-of-confinement claims raised by pre-trial detainees. However, this Court finds the distinction to be of form rather than substance, since the Supreme Court's guidance in <u>Twombly</u> and the Court of Appeals' clarifications in <u>Phillips</u> are equally applicable to Eighth and Fourteenth Amendment cases, and "a non-medical prison official['s] . . . belie[f] that the prisoner is in capable hands," <u>Spruill</u>, 372 F.3d at 236, should not be deemed less justified simply because the prisoner asserts that his confinement is imposed as punishment rather than as an act of deliberate indifference: the Court of Appeals' "division of labor" argument effectively spelled out the reasonable relation between such non-medical prison official's belief and the prison's legitimate penological purpose.

### 3.   Plaintiff's Allegations Fail to State a Claim

Here, Plaintiff asserts the following chain of events:

(1)  on June 19, 2007, Plaintiff arrives to the Facility after having (a) his foot X-rayed at the emergency room of a general hospital; (b) correct diagnosis provide; (c) a set of crutches; and (d) pain-reducing medication prescribed;

(2)  "several days later," Plaintiff is seen by Dr. Hubbard, who asks Plaintiff to sign a release form enabling her to obtain Plaintiff's records from the general hospital and states that, upon studying that information, "she will know where to start";

(3)  Dr. Hubbard, being precluded by the Facility's policy from dispensing the pain-reducing medication prescribed by the general doctor (due to narcotic element contained in the drug), offers Plaintiff Motrin pills to reduce his pain;

(4)  as time goes by, Plaintiff, receiving no information from--and no treatment by--Dr. Hubbard makes an inquiry with an entity providing medical services to the Facility's inmates and learns that Dr. Hubbard's employ was terminated;

(5)  Plaintiff learns that, upon termination of Dr. Hubbard's employ, his medical case was re-assigned to and being handled by another doctor servicing the Facility prisoners, Dr. Nugen;

(6)  On November 18, 2007 (that is, six months after arriving to the Facility), Plaintiff files a grievance addressed to the

34

warden (and, potentially, to the supervising officers).   See Docket Entry No. 3, at 7-8, 10-11, 17-18, 20.

(7)   On an unstated day in October of 2007 (that is, at least 18 days *prior* to filing his grievance addressed to the warden), Plaintiff files his original complaint asserting, <u>inter alia</u>, civil liability by the warden and supervisory officer and seeking compensatory damages, in the amount "7 million or negotiable" from each of these Defendants.   See Docket Entry No. 1, at 5.

(8)   On January 10, 2008 (that is, less than two months after filing his grievance with the warden), Plaintiff starts his medical treatment with an out-patient orthopedic doctor.   See Docket Entry No. 10-3, at 5.

These allegations fail to state a claim against the Facility's supervising officials since, at the time of Plaintiff's filing of his grievance, the warden and supervising officer pursued a reasonable penological goal by delegating Plaintiff's medical care to his newly assigned medical practitioner and were "justified in believing that [Plaintiff was] in capable hands" of Dr. Nugen. <u>Spruill</u>, 372 F.3d at 236.   Plaintiff's allegations against the warden (and other supervising officers at the Facility) based on the sole fact of Plaintiff's filing grievances asserting delays in his medical treatment fail to  state a cognizable due process claim.   Therefore, this Court will deny Plaintiff leave to "re-

35

amend" his "amended complaint." <u>See</u>   <u>Foman</u>, 371 U.S. at 182.
Plaintiff's allegations against the warden and supervising officer
will remain dismissed without prejudice.[5]


**IV.   <u>CONCLUSION</u>**

    In view of the foregoing, the Court will deny Plaintiff's
application for leave to file his "re-amended" Complaint.

    An appropriate order accompanies this Opinion.


                              <u>s/Renée Marie Bumb</u>
                              **RENÉE MARIE BUMB**
                              **United States District Judge**

Dated:<u> April 25, 2008</u>


─────────────

[5]

    Plaintiff, however, is reminded that he may seek leave to
amend his pleading in the event he obtains, during discovery
proceedings or through any other means,  factual information
suggesting that the warden or  supervising officer were personally
involved, directed or acquiesced in the decisions to delay
Plaintiff's medical treatment, or actually implemented certain
administrative policies with reckless disregard to the harm that
these policies caused to Plaintiff's health.  The Court will then
examine Plaintiff's application under <u>Foman</u>, 371 U.S. at 182.